## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ROBERT BUCHANAN, JR., )
)
    Plaintiff, )
) Case No. 08-cv-7063
v. )
) Judge Robert M. Dow, Jr.
TERRY L. McCANN, et al. )
)
    Defendants. )

### MEMORANDUM OPINION AND ORDER

Plaintiff Robert Buchanan, Jr. ("Buchanan"), an inmate at Stateville Correctional Center ("Stateville"), sued Defendants Sergeant Troy Mayes ("Sergeant Mayes"), Sergeant Terrell Goines ("Sergeant Goines"), Sergeant Anthony Selmon ("Sergeant Selmon"), and John and Jane Does 1-10 ("Does 1 through 10")[1] under 42 U.S.C. § 1983 alleging violations of his constitutional rights. Specifically, Buchanan contends that Defendants acted recklessly, maliciously, and deliberately indifferent to his health and safety (Count I) and were deliberately indifferent to his medical needs (Count II) when they failed to respond to Buchanan's calls for help after he was physically attacked by his cellmate. Sergeant Mayes and Sergeant Selmon (collectively, "Defendants") now move for summary judgment on Counts I and II [109]. For the reasons set forth below, the Court grants Defendants' motion.

---

[1] Buchanan's original complaint named several other individuals as Defendants, but his third amended complaint has narrowed the case down to the Defendants listed here.

I.      **Statement of Facts**[2]

Plaintiff Buchanan is a prisoner in the custody of the Illinois Department of Corrections. (Pl. Resp. ¶ 4.) In July of 2008, Buchanan was placed in a cell with another prisoner, Joseph Murray ("Murray"). (*Id.* ¶ 5). The cell was located in an area referred to as "F-House" at Stateville, a maximum security facility run by IDOC. (*Id.* ¶ 5; 3d Am. Compl. ¶ 16.) According to Buchanan's testimony, on August 15, 2008,[3] after spending some weeks together without incident, Buchanan made a disparaging remark about a woman he believed was Murray's girlfriend. (Pl. Resp. ¶ 6.) In response, Murray attacked Buchanan in their cell, stabbing Buchanan twice with a shank made from a plastic mirror. (*Id.* ¶¶ 6-7.) While not material to the motion here, the parties dispute whether a fight between Buchanan and Murray actually occurred. (Compare Pl. Ex. 2, Buchanan Dep. 11:5-15:6 and Pl. Ex. 7, Murray Dep. 11:23-12:13, with Pl. Ex. 7, Murray Dep. 10:10-18.)

According to Buchanan, after Murray stabbed him, Buchanan ran to the door of the prison cell and called out to Sergeant Goines for help. (Pl. Resp. ¶ 8.) Sergeant Goines heard Buchanan calling to him, but held up one finger and told him to "hold on." (Def. Resp. ¶ 16.) While defending himself from further attack, Buchanan testified, he

---

[2] Throughout this opinion, the Court will refer to the parties' Local Rule 56.1 Statements of Material Facts as follows: Defendants' statement of material facts ("Def. Ex. ___."); Plaintiff's response to Defendants' statement of material facts ("Pl. Resp. ¶ ___."); Plaintiff's statement of additional facts ("Pl. Ex. ___."); and Defendants' response to Plaintiff's statement of additional facts ("Def. Resp. ¶ ___.").

[3] Defendants statement of material facts refers to both August 18, 2008 and August 15, 2008 as the date of the alleged incident, but the reference to August 18 appears to be a typographical error, not a genuine factual dispute. For support for the date of the incident, Defendants cite to Buchanan's third amended complaint, which alleges that the incident occurred on August 15, 2008.

was able to access a telephone, which he used to call his sisters to tell them about his predicament. (*Id.* ¶ 17.) Despite the fact that Buchanan's sisters twice called Stateville to demand that prison officials assist their brother, no Stateville official came to Buchanan's assistance until approximately 6:50 p.m. (*Id.*)

The incident report relating to the alleged attack lists Sergeant Goines as the sergeant in charge of F-House at the time at issue. (*Id.* ¶ 21.) The daily roster and Sergeant Goines' timesheet for August 15, 2008 indicate that he worked two shifts on that day. (*Id.* ¶ 21.) Nonetheless, Sergeant Goines denies that he was on duty in F-House at the time of Buchanan's alleged attack because the "shift activity logbook," a document that tracks the prison staff assigned to F-House on any given date, indicates that Sergeant Selmon was on duty as the F-House unit sergeant from 7:00 a.m. until 11:00 p.m. (Def. Resp. ¶¶ 22-23; Pl. Ex. 8 ¶ 2.) Sergeant Goines testified at his deposition that Sergeant Selmon often worked double-shifts. (*Id.* ¶ 23.) For his part, Sergeant Selmon admits that he was on duty in F-House on August 15, 2008, but only until he was relieved by Sergeant Goines. (*Id.*)

According to Buchanan, there is only one sergeant on duty in F-House at a time. (Pl. Resp. ¶ 14.) Buchanan testified that he does not recall seeing Sergeant Selmon on the day of the incident. At his deposition, Buchanan could not give a reason as to why he named Sergeant Selmon in his complaint. (*Id.* ¶ 12.) Buchanan also does not recall seeing Sergeant Mayes on the day of the incident. (*Id.* ¶ 9.) Further, Buchanan admits that another inmate who helped him prepare his complaint filled in Sergeant Mayes' name where Buchanan had previously written "unknown" because Buchanan could not remember Sergeant Goines' name at the time. (*Id.* ¶ 10.) There is no evidence that

Sergeant Mayes was personally involved in the alleged deprivations of Buchanan's constitutional rights. (*Id.* ¶ 15.)

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III.   Analysis**

Sergeants Mayes and Selmon argue that they cannot be held liable under § 1983 because they were not personally involved in the alleged deprivation of Buchanan's constitutional rights. To prevail on a claim under § 1983, a plaintiff must establish that the defendant personally caused or participated in a deprivation of a constitutional right. See *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). While a supervisor cannot be personally liable under § 1983 based on a theory of *respondeat superior*, a plaintiff can meet the personal responsibility requirement if he can demonstrate that the conduct causing the constitutional deprivation occurred at the direction of the supervisor or with the supervisor's knowledge and consent. *Gentry*, 65 F.3d at 561. To be found personally liable, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). In other words, the plaintiff must demonstrate "some causal connection or affirmative link between the action complained about and the official sued." *Gentry*, 65 F.3d at 561.

Buchanan concedes that summary judgment as to Sergeant Mayes is warranted. (See, *e.g.*, 114 at 1-2, 5; Pl. Resp. ¶ 15.) Accordingly, the Court grants Defendants' motion as to Sergeant Mayes and dismisses him from the case. Buchanan contends, however, there is a genuine issue of material fact as to whether (1) Sergeant Selmon was personally involved in the alleged deprivation of Buchanan's constitutional rights, or (2)

5

Sergeant Selmon knew about the fact that other prison officials were violating Buchanan's constitutional rights and condoned it.

While the Court agrees that there is a disputed issue of fact as to whether Sergeant Selmon was on duty during the incident, the fact that he was on duty alone is not enough to meet the personal responsibility requirement. Indeed, even taking the facts in the light most favorable to Buchanan, as the Court must do at this stage, no reasonable jury could conclude that Sergeant Selmon was personally responsible or knew about and condoned the deprivation of Buchanan's constitutional rights. See, *e.g.*, *Moore v. City of Chicago*, No. 02 C 5130, 2007 WL 3037121, at *8-9 (N.D. Ill. Oct. 15, 2007) (granting summary judgment even where "an inference could be made that [the defendant] was present and on-duty when plaintiff was requesting medical care" because the plaintiff never identified the defendant "as one of the officers from whom she requested medical care"). Summary judgment is the "put up or shut up" moment in a lawsuit, *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), and Buchanan has put forth no evidence of any "causal connection or affirmative link between" the alleged unconstitutional act and Sergeant Selmon. See *Gentry*, 65 F.3d at 561. In fact, Buchanan's deposition testimony suggests the opposite. Buchanan admits that he does not recall seeing Sergeant Selmon on the day of the incident and he cannot give any reason as to why he named Sergeant Selmon in his complaint. Buchanan also testified that the sergeant to whom he called out for help – Sergeant Goines – was the sergeant on duty at the time. In short, Buchanan never identified Sergeant Selmon as someone from whom he requested medical care. See, *e.g.*, *Granville v. Dart*, No. 09 C 2070, 2011 WL 892751, at *9 (N.D. Ill. Mar. 11, 2011) (granting summary judgment where the plaintiff admitted in his deposition that he

did not complain to the defendants about the conditions of his confinement). And although Buchanan is correct that there is no requirement that he actually saw Sergeant Selmon, Buchanan does have to provide *some* evidence linking the alleged constitutional violation to Sergeant Selmon. He has not done so here. Accordingly, the Court grants Sergeant Selmon's motion for summary judgment and dismisses him from the case.

**III.     Conclusion**

For the reasons set forth above, the Court grants Defendants' motion for summary judgment [109]. Sergeant Mayes and Sergeant Selmon are dismissed from this case. The case will proceed to trial as to Buchanan's claims against Sergeant Goines on November 28, 2011.

Dated: October 12, 2011

Robert M. Dow, Jr.
United States District Judge